**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-1893

**JUAN RIOS,** an individual,

    Plaintiff,

v.

**SELECT ENERGY SERVICES**, **INC.,** a Delaware Corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Juan Rios ("**Mr. Rios**"), through his undersigned counsel, submits this Complaint and Jury Demand against Select Energy Services, Inc., a Delaware corporation.

## PARTIES

1. Mr. Rios is an individual who resides at 1900 Main Street, #32, Limon, Colorado 80828.

2. Select Energy Services, Inc. ("**SES**") is a Delaware corporation. Its corporate headquarters are located at 1233 West Loop South, Suite 1400, Houston, Texas 77027.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Mr. Rios's claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 12117(a), and 42 U.S.C. § 2000e-5(f)(3). This is an action authorized by, and instituted under, Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §§ 2000e, *et seq*. ("**Title VII**") and 42 U.S.C. § 12101, *et seq*., the Americans with Disabilities Act, as amended ("**ADA**").

4. This Court has supplemental jurisdiction over Mr. Rios's state claims pursuant to 28 U.S.C. § 1367, as his state law claims arise from the same case and controversy as the claims over which this Court has original jurisdiction.

5. The unlawful employment practices alleged herein were committed within the judicial district of the United States District Court for the District of Colorado. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PROCEDURES

6. On or about August 15, 2019, Mr. Rios filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Colorado Civil Rights Division ("**CCRD**") related to unequal treatment based on race, national origin, disability, and retaliation.

7. On or about June 17, 2020, the EEOC issued a Dismissal and Notice of Rights to Mr. Rios, which included a Notice of Suit Rights, authorizing Mr. Rios to bring the present lawsuit.

8. On or about March 30, 2020, the CCRD issued a Notice of Right to Sue to Mr. Rios, authorizing Mr. Rios to bring the present lawsuit pursuant to Colorado's Anti-Discrimination Act, Colo. Rev. Stat. § 24-304-401, *et seq*. ("**CADA**").

## GENERAL ALLEGATIONS

### *Employer and Employee Information*

9. Mr. Rios is a Latino male of Mexican origin.

10. Ms. Rios is disabled as defined by the ADA. He suffers from diabetes, which substantially limits one or more of his major life activities, including endocrine function.

11. SES specializes in finding, moving, and disposing of water used for fracking activities.

12. A large percentage of the time, SES operates on sites owned and/or operated by its large oil company customers, such as ConocoPhillips and Anadarko.

13. SES is an employer pursuant to CADA, Title VII, and the ADA, and at all times material hereto has employed more than fifteen employees.

14. Mr. Rios worked for SES between June 30, 2016, and May 20, 2019, when he was terminated.

15. At the time of his termination, Mr. Rios was a Water Transfer Lead. He spent the majority of his time laying down hoses used to move fracking water from its source to SES customers' job sites. As water was flowing, he monitored water flow and water tank levels.

16. At all times relevant this this matter, Mr. Rios's direct supervisor was Michael Best ("Mr. Best"). Mr. Best was Water Transfer Operations Manager for SES at its Greeley, Colorado location.

17. Mr. Rios, because of his substantial tenure with the Company and his English-language skills, often acted as a *de facto* employee representative for the Spanish-speaking workers on SES's job sites.

18. Mr. Rios was often called on to operate as a mediator between management (who are nearly all Caucasian) and fellow Latino employees, including during training and on-boarding for new employees.

*Examples of Unlawful Discrimination by SES*

19. Mr. Rios witnessed regular instances of Mr. Best's use of derogatory names directed at Latinos and his unequal treatment of Latino employees.

20. In early 2019, three SES employees were found sleeping on the job. Two of the employees were Caucasian, one was Latino. The Latino employee (José, last name known) was suspended without pay for the infraction and, upon information and belief, the Caucasian employees (Kevin and Chris, last names known) were not subject to discipline at all.

21. Yet another tactic Mr. Best used to get rid of Latino employees was to reduce their scheduled work hours so they would either quit or had no hours on the schedule at all.

22. This happened to at least two Latino employees between January and May 2019. Rito Rodriguez and Joe Opeola both left SES after Mr. Best reduced their hours to unsustainable levels, despite there being more than enough work to schedule these employees. [Was SES hiring early in 2019?]

23. In March 2019, Meregildo Ojeda ("**Mr. Ojeda**"), a Latino employee, became ill and brought in a doctor's note that said he needed four days off from work to recover from his illness. Mr. Best told Mr. Ojeda he could take the time off, but then Mr. Best never scheduled Mr. Ojeda to work again, in retaliation for his needing time off due to illness. Upon information and belief, Caucasian employees were allowed time off when sick without recourse.

24. After Mr. Ojeda's termination, SES supervisor Trevor Roncka ("Mr. Roncka") told Mr. Ojeda that Mr. Best had never liked Mr. Ojeda, specifically because he is Latino. Mr. Roncka also said he felt he could finally tell Mr. Ojeda that since he no longer worked at SES.

25. On the job, Mr. Best told Spanish-speaking employees that they needed to speak English because "we're in America." This was not a one-time comment, it was something Mr. Best regularly said when he encountered employees speaking Spanish at work.

26. Mr. Best did not speak Spanish, but he and SES's other Caucasian employees frequently called SES's Latino employees derogatory and offensive names in Spanish, including "maricón," and "joto."

27. Mr. Best repeatedly called SES's Latino employees "lazy," a sadly familiar and untrue stereotype about Latinos.

### *SES Over-Disciplined Mr. Rios in December 2018 in Violation of the ADA*

28. On Wednesday, December 5, 2018, Mr. Rios had worked more than 20 hours without a rest or meal break.

29. Mr. Rios started to feel ill and knew he needed to take his diabetes medication and get something to eat.

30. Mr. Rios left the work site for approximately 25 minutes to get something to eat and take his medication. He returned to work as soon as possible.

31. When Mr. Best found out Mr. Rios had left the site to eat and take his medication, Mr. Rios was suspended without pay for five days for failing to "follow directions from supervisors" and "being unwilling to help rig down the job."

32. After what Mr. Rios felt was an unlawful suspension, Mr. Rios mentioned the situation to ConocoPhillips Water Treatment Consultant, Steve Story ("**Mr. Story**"). Mr. Story and Mr. Rios were familiar with one another after working on the same ConocoPhillips' sites for a number of years.

33. Mr. Story told Mr. Rios that Mr. Rios should call him when issues such as that one arise so Mr. Story could help with the situation.

34. Mr. Rios believed Mr. Story was in a position of authority such that he could address Mr. Rios's concerns with Mr. Best.

35. Based on their conversations, Mr. Rios also knew Mr. Story to be more responsive to concerns about discrimination than Mr. Best.

### *SES Suspends Mr. Rios and Then Terminates His Employment*

36. Mr. Rios was at work on Friday, May 17, 2019, at ConocoPhillips' Chico Pad location near Watkins, Colorado, when Mr. Best directed Mr. Rios to go to the Prosper Farms location (approximately four miles away) to oversee filling the water tanks at Prosper Farms so the water would be ready for use the next day.

37. Mr. Rios went to the Prosper Farms location, which is also owned by ConocoPhillips, and waited for Mr. Best or a co-worker to call and notify him that the water was on its way.

38. Standard protocol for this process dictates that someone from the site that is sending water shall notify someone at the receiving site that the water is on its way.

39. On this day, Mr. Rios was at the receiving site, waiting to hear the water was on its way to his location, approximately four miles from the location that would be sending the water.

40. Mr. Rios waited, but never received a call.

41. Mr. Rios called coworker Elmer (last name unknown), who was at the Chico Pad location, to ask about the status of the water. Elmer advised him they were "pigging" the line

from Chico Pad to Sky Ranch, meaning they were using an automated machine to clear the line prior to sending the water.

42. Sky Ranch is the location from which all of SES's fresh water originated for these particular projects.

43. Then, a ConocoPhillips employee approached Mr. Rios and said that one of the water tanks was overflowing.

44. Mr. Rios saw that the water flow meter was running at 45 barrels per minutes. He immediately called coworker Martin Jr. (last name unknown) to ask why no one had given him notice that the water was on its way.

45. Martin Jr. was the employee stationed at a T in the water lines, so he could send water from the source at Sky Ranch to either Chico Pad or Prosper Farms.

46. Martin Jr. responded "Oh, shit!" and disconnected the call.

47. Mr. Rios then saw that the water flow meter had returned from 45 barrels per minute back to zero.

48. Mr. Rios immediately ran to ConocoPhillips' Company Man's office to report the overflow of fresh water. The Company Man is an on-site supervisor of subcontractors.

49. At approximately the same time, Mr. Best arrived on site, entered the Company Man's office, and began yelling at Mr. Rios, blaming him for the overflow.

50. ConocoPhillips' Company Man, Kenny (last name unknown), told Mr. Best to calm down.

51. Kenny told Mr. Best he did not have to blame anyone for what had happened because it was clear to him the incident was the result of a miscommunication.

52. Kenny also said that because the spill was less than three barrels of fresh water, it would not even need to be reported.

53. Mr. Best directed Mr. Rios to leave the Company Man's office so he could resume yelling at Mr. Rios about how the overflow was his fault, despite it having been Mr. Best who failed to notify Mr. Rios that the water was on its way, and Martin Jr. who may have failed to properly divert the water, sending it in error to Prosper Farms without warning.

54. Mr. Best then told Mr. Rios he wanted to meet with everyone involved in the overflow at the yard at the end of the day to discuss what had happened.

55. At the conclusion of the workday, when Mr. Rios returned to the yard in Greeley, he found he was there alone with Mr. Best.

56. Mr. Best told Mr. Rios he was being suspended from work, without pay, for seven days because of the overflow incident.

57. Mr. Rios was shocked to hear he was the only one being suspended, particularly after witnessing the Company Man's calm reaction to the overflow, and knowing that it was Mr. Best's failure to notify Mr. Rios that caused the overflow in the first place.

### *Mr. Rios's Report of Discrimination and Termination*

58. Mr. Rios contacted Mr. Story on Saturday, May 18, 2019, to report his suspension, as Mr. Story had told him to do when he had issues with Mr. Best.

59. Mr. Story told Mr. Rios he needed Mr. Rios to work on ConocoPhillips's sites the next week. Then, upon information and belief, Mr. Story contacted Mr. Best to discuss what Mr. Rios had reported to him.

60. Mr. Best contacted Mr. Rios by text message on Sunday, May 19, 2019, to schedule a meeting with him on Monday, May 20, 2019, at 10:00 a.m.

61. Mr. Rios again contacted Mr. Story to update him about the meeting scheduled to take place the next day.

62. Mr. Story advised Mr. Rios to record the Monday, May 20, 2019 meeting with Mr. Best.

63. On Monday, May 20, 2019, Mr. Rios arrived at the meeting to find Mr. Best and Jeremy Sanchez, an SES Human Resources manager.

64. They advised Mr. Rios that he was being terminated.

65. Mr. Best told Mr. Rios that he had been contacted the day before by someone from ConocoPhillips (upon information and belief, Mr. Story) who told him that Mr. Rios spoke with them about his suspension. Mr. Best said that conduct was against company policy and that they had decided to let Mr. Rios go as a result.

66. Mr. Rios was fired on Monday, May 20, 2019 because he contacted Mr. Story to make a complaint of discrimination.

67. Mr. Rios's termination paperwork indicates he was fired because he engaged in "[c]onduct that can damage Selects (sic.) reputation with the general public."

**FIRST CLAIM FOR RELIEF**
**Hostile Work Environment and Discrimination Based on**
**National Origin in Violation of Title VII and CADA**
**42 U.S.C. § 2000e-2(a) and Colo. Rev. Stat. § 24-34-401, *et seq*.**

68. Mr. Rios incorporates each of the allegations set forth above, as if fully set forth herein.

69. At all times relevant hereto, SES was and is subject to Title VII and CADA.

9

70. Mr. Rios is a disabled man of Mexican origin and, therefore, is a member of protected classes under Title VII and CADA.

71. At all times relevant hereto, Mr. Rios was qualified to perform the duties of his position as Water Transfer Lead.

72. Mr. Rios's supervisor and SES knew or reasonably should have known that Mr. Rios is a Latino man of Mexican origin.

73. Mr. Rios was discriminated against and harassed by his supervisor and other Caucasian coworkers based on his national origin, including by being more-harshly disciplined than his Caucasian coworkers and being called derogatory and offensive names.

74. Mr. Rios's supervisor and SES's leadership engaged in discriminatory practices with malice and/or with reckless indifference to Mr. Rios's protected rights, as set forth in the preceding paragraphs.

75. The discriminatory treatment was unwelcome and detrimentally affected Mr. Rios, who viewed the treatment as subjectively hostile and abusive. Said treatment would also be viewed as objectively hostile and abusive to a reasonable person.

76. Such treatment denied Mr. Rios equal terms, conditions, and privileges of employment, thereby violating Mr. Rios's rights as guaranteed by Title VII and CADA.

77. As a result of the conduct of Mr. Rios's supervisor and SES as above alleged, Mr. Rios has been damaged in an amount to be determined at trial, including but not limited to, compensatory damages for back pay, front pay, lost job benefits, damages for emotional distress and pain and suffering, punitive damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

**SECOND CLAIM FOR RELIEF**
Retaliation in Violation of Title VII and CADA
42 U.S.C. § 2000e-2(a) and Colo. Rev. Stat. § 24-34-401, *et seq*.

78. Mr. Rios incorporates each of the allegations set forth above, as if fully set forth herein.

79. At all times relevant hereto, SES was and is subject to Title VII and CADA.

80. Mr. Rios is a disabled man of Mexican origin and, therefore, is a member of protected classes under Title VII and CADA.

81. At all times relevant hereto, Mr. Rios was qualified to perform the duties of his position as Water Transfer Lead.

82. Mr. Rios's supervisor and SES knew or reasonably should have known that Mr. Rios is a Latino man of Mexican origin.

83. Mr. Rios engaged in protected conduct when he complained to Mr. Story about national origin discrimination.

84. As set forth in the preceding paragraphs, Mr. Rios complained to Mr. Story about discrimination because he knew Mr. Story would communicate the complaint to SES in a way that may finally elicit a response.

85. Mr. Story did communicate Mr. Rios's complaint to SES.

86. Mr. Rios was fired on Monday, May 20, 2019, because of his complaint.

87. Mr. Rios's supervisor and SES engaged in retaliatory practices with malice and/or with reckless indifference to Mr. Rios's rights, as set forth in the preceding paragraphs.

88. As a result of the conduct of Mr. Rios's supervisor and SES as above alleged, Mr. Rios has been damaged in an amount to be determined at trial, including but not limited to,

compensatory damages for back pay, front pay, lost job benefits, damages for emotional distress and pain and suffering, punitive damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

**THIRD CLAIM FOR RELIEF**
**Discrimination in Violation of the ADA and CADA**
**42 U.S.C. § 12101 and Colo. Rev. Stat. § 24-34-401,** *et seq***.**

89. Mr. Rios incorporates each of the allegations set forth above, as if fully set forth herein.

90. At all times relevant hereto, SES was and is subject to the ADA and CADA.

91. Mr. Rios is a disabled man of Mexican origin and, therefore, is a member of protected classes under Title VII and CADA.

92. Mr. Rios suffered from diabetes, which limits one or more of his major life activities, including endocrine function.

93. At all times relevant hereto, Mr. Rios was qualified and able to perform the essential functions of his position as Water Transfer Lead.

94. Mr. Rios's supervisors knew or reasonably should have known that Mr. Rios was disabled.

95. SES gave Mr. Rios disproportionately harsh discipline because of his disability when he had to leave work to eat and take his prescribed medication.

96. When Caucasian employees without disabilities were found sleeping on the job, they did not face discipline, but when Mr. Rios left work for medical reasons, he was suspended without pay for five days.

97. Disparate treatment of Mr. Rios by his supervisor and SES was intentional and due to Mr. Rios's disability.

98. Such conduct denied Mr. Rios equal terms, conditions, and privileges of employment, thereby violating Mr. Rios's rights.

99. As a result of the conduct as above alleged, Mr. Rios has been damaged in an amount to be determined at trial, including but not limited to, compensatory damages for back pay, lost job benefits, damages for emotional distress and pain and suffering, punitive damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Rios prays for entry of judgment in his favor and against SES as follows:

a. Economic damages, including without limitation, back pay and lost benefits;

b. Compensatory damages, including without limitation, loss of opportunity for professional growth and additional financial incidental and consequential damages;

c. Non-economic damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of reputation, and other non-pecuniary losses;

d. Punitive damages as allowed by law and to be determined at trial;

e. Reasonable attorneys' fees and costs;

f. Pre- and post-judgment interest; and

g. Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Dated: June 26, 2020

By: /s/ *Leah P. VanLandschoot*
Leah P. VanLandschoot, #35723
Amy M. Maestas, #46925
THE LITIGATION BOUTIQUE LLC
1720 S. Bellaire Street, Suite 520
Denver, Colorado 80222
T: 303.355.1942
F: 303.355.2199
lvanlandschoot@thelitbot.com
amaestas@thelitbot.com

ATTORNEYS FOR PLAINTIFF
JUAN RIOS

**Plaintiff's Address:**
1900 Main Street, #32
Limon, Colorado 80828